Les W. Robertson (SBN 140796)
Robertson & Associates, APC
655 West Broadway, Suite 1410
San Diego, CA  92101
Tel: (619) 531-7000
Fax: (619) 531-7007

Konrad Sherinian (*Pro Hac Vice*)
The Law Offices of Konrad Sherinian, LLC
1755 Park Street, Suite 200
Naperville, IL 60563
Tel: (630) 318-2606
Fax: (630) 318-2605

David Lesht (*Pro Hac Vice*)
The Law Offices of Eugene M. Cummings PC
1 N. Wacker Drive, Suite 4130
Chicago, IL 60606
Tel: (312) 984-0144
Fax: (312) 984-0146

Attorneys for Defendant GrubHub, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., | Case No.  3:12-cv-00739-JLS-NLS |
| Plaintiff, | **DEFENDANT GRUBHUB, INC.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INFRINGEMENT** |
| vs. | |
| GRUBHUB, INC. | **TRIAL BY JURY DEMANDED** |
| Defendant. | |
| | Complaint Filed:  March 27, 2012 |

Defendant GrubHub, Inc. ("GrubHub") hereby answers Plaintiff Ameranth, Inc.'s ("Ameranth") First Amended Complaint for Patent Infringement ("Complaint").  Like paragraph numbers are used for reference purposes.

## PARTIES

1. GrubHub admits that Ameranth is a Delaware corporation but is without current knowledge or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 1 of the Complaint, and therefore denies the same.

2.  GrubHub admits that is a Delaware corporation and that its principal place of business is Chicago, Illinois.  GrubHub denies the remaining allegations of the Paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3.  GrubHub admits that the Complaint purports to be an action for patent infringement arising under 35 U.S.C. §§ 271, 281-285.

4.  GrubHub admits the allegations of paragraph 4 of the complaint.

5.  GrubHub admits that it operates a restaurant service that can be used by residents of this Judicial District.  GrubHub denies the remaining allegations of paragraph 5 of the Complaint.

6.  GrubHub admits that the Court has personal jurisdiction over it.  GrubHub denies the remaining allegations of paragraph 6 of the Complaint.

7.  GrubHub admits that Venue is proper in this Judicial District.  GrubHub denies the remaining allegations of paragraph 7 of the Complaint.

## BACKGROUND

8.  GrubHub is without current knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint, and therefore denies the same.

9.  GrubHub is without current knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint, and therefore denies the same.

10. GrubHub is without current knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint, and therefore denies the same.

11. GrubHub is without current knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, and therefore denies the same.

## RELATED CASE PREVIOUSLY FILED

12. GrubHub admits that U.S. Pat. No. 8,146,077 is related to U.S. Pat. Nos. 6,384,850, 6,871,325, and 6,982,733.  GrubHub denies the remaining allegations of paragraph 12 of the Complaint.

13. GrubHub admits that Ameranth is the plaintiff and counter-defendant in Case No. 3:11-cv-018180-JLS-NLS, and that GrubHub is a defendant and counter-plaintiff in that case. GrubHub denies the remaining allegations of paragraph 13 of the Complaint.

<b><u>COUNT I</u></b>

14. GrubHub reiterates and incorporates its responses to paragraphs 1-13 above as if fully set forth herein.

15. GrubHub admits United States Patent No. 8,146,077 (the '077 patent") indicates on its face that it issued on March 27, 2012, and that the '077 patent is entitled "Information Management and Synchronous Communications System with Menu Generation." GrubHub admits that a copy of the '077 patent was attached to the Complaint. GrubHub denies the remaining allegations of paragraph 15 of the Complaint.

16. GrubHub is without current knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16 of the Complaint, and therefore denies the same.

17. GrubHub denies the allegations of paragraph 17 of the Complaint.

18. GrubHub denies the allegations of paragraph 18 of the Complaint.

19. GrubHub denies the allegations of paragraph 19 of the Complaint.

20. GrubHub denies the allegations of paragraph 20 of the Complaint.

21. GrubHub denies the allegations of paragraph 21 of the Complaint.

22. GrubHub denies the allegations of paragraph 22 of the Complaint.

23. GrubHub denies the allegations of paragraph 23 of the Complaint.

24. GrubHub denies the allegations of paragraph 24 of the Complaint.

25. GrubHub denies the allegations of paragraph 25 of the Complaint.

26. GrubHub denies the allegations of paragraph 26 of the Complaint.

<b><u>PRAYER FOR RELIEF</u></b>

27. GrubHub denies that Ameranth is entitled to any of the requested relief.

28. To the extent not expressly admitted above, GrubHub denies the factual allegations of the Complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

29. GrubHub admits that Ameranth has demanded a jury trial.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

30. GrubHub does not infringe any valid and enforceable claim of the '077 patent.

31. For example, claims 1-12 of the '077 patent require "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

32. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

33. For example, claims 1-8 of the '077 patent require "menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

34. GrubHub does not make, use, sell or offer for sale an "ordering system/product/service" that includes "menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least

4  (12 cv 00739)

the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

35. For example, claims 9-12 of the '077 patent require "a modifier menu capable of being stored on said data storage device, and menu configuration software enabled to automatically generate a programmed handheld menu configuration from said master menu for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

36. GrubHub does not make, use, sell or offer for sale an "ordering system/product/service" that includes "a modifier menu capable of being stored on said data storage device, and menu configuration software enabled to automatically generate a programmed handheld menu configuration from said master menu for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

37. For example, claims 1-12 of the '077 patent require "wherein the menu configuration

software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface".

38. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the menu configuration software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface".

39. For example, claims 1-8 require "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said programmed cascaded sets of linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user interface screens for display of the master menu on said first graphical user interface".

40. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said programmed cascaded sets of linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user interface screens for display of

the master menu on said first graphical user interface".

41. For example, claims 9-12 of the '077 patent require "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said cascaded sets of linked graphical user interface screens for display of the programmed handheld menu configuration are configured differently from the cascaded sets of related graphical user interface screens for display of the master menu on said first graphical user interface".

42. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said cascaded sets of linked graphical user interface screens for display of the programmed handheld menu configuration are configured differently from the cascaded sets of related graphical user interface screens for display of the master menu on said first graphical user interface".

43. For example, claims 1-8 of the '077 patent require "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

44. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the wireless handheld computing device and

real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

45. For example, claims 9-12 of the '077 patent require "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

46. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

47. For example, claims 1-12 of the '077 patent require "wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

48. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

49. For example, claims 13-18 of the '077 patent require "[a]n information management and

real time synchronous communications system for use with wireless handheld computing devices and the internet comprising".

50. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising".

51. For example, claims 13-18 of the '077 patent require "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

52. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

53. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality application information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized system, such that the hospitality application information is synchronized between any connected users".

54. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality application information is capable of being displayed on the wireless handheld computing device, at least one web

page and other display screens of the synchronized system, such that the hospitality application information is synchronized between any connected users".

55. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".

56. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".

57. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page".

58. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page".

59. For example, claims 13-18 of the '077 patent require "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

60. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

61. For example, claims 13-18 of the '077 patent require "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page."

62. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page."

63. GrubHub has not infringed and is not infringing, either literally or under the Doctrine of Equivalents, directly or indirectly, by inducement or contribution, any valid and enforceable claim of the '077 patent.

64. As GrubHub has not infringed and is not infringing any valid and enforceable claim of the '077 patent, GrubHub has not willfully infringed and is not willfully infringing any valid and enforceable claim of the '077 patent.

**Second Affirmative Defense**

65. The asserted claims of the '077 patent are taught in one or more single prior references and/or by a single prior art system, and are, therefore, invalid as anticipated.

66. For example, under the constructions that Ameranth is apparently taking in this case, each

and every element of the claims of the '077 patent are taught by U.S. Pat. No. 5,845,263 ("Camaisa"), issued December 1, 1998, and titled Visual Ordering System.  A true and correct copy of Camaisa is attached hereto as Exhibit A.  Camaisa is prior art to the '077 patent.

67. For example, under the constructions that Ameranth is apparently taking in this case, each and every element of the asserted claims of the '077 patent are taught by U.S. Pat. No. 7,069,228 ("Rose"), issued June 27, 2006 and titled "Apparatus and Method for an Internet Based Computer Reservation Booking System".  A true and correct copy of Rose is attached hereto as Exhibit B.  Rose is prior art to the '077 patent.

68. Ameranth has accused Allmenus.com and Campusfood.com of infringing the '077 patent.

69. Allmenus.com and Campusfood.com use a common ordering system ("the Campusfood Ordering System").

70. The Campusfood Ordering System was designed and implemented prior to September 2, 1997.  On September 2, 1997, the Campusfood Ordering System took its first public orders, and it has been in continuous use since then.  A brochure discussing the Campusfood Ordering System is attached as Exhibit C.

71. Under the constructions put forth by Ameranth in the First Menusoft Action, each and every element of the asserted claims of the '077 patent was present in the Campusfood Ordering System prior to the earliest priority date of the '077 patent.

72.  Therefore, the claims of the '077 patent are invalid as anticipated under 35 U.S.C. § 102.

**Third Affirmative Defense**

73. The claims of the '077 patent are invalid as one of ordinary skill in the art would have found them obvious at the time of alleged invention.  *See* 35 U.S.C. § 103.

74. The "TransPad" is prior art to the '077 patent.  A true and correct copy of a publication describing the TransPad is attached hereto as Exhibit D.

75. The claims of the '077 patent would have been obvious to one of ordinary skill in the art, for example, through a combination of one or more of TransPad, Camaisa, Rose, the Campusfood Ordering System, or other prior art references.

76. Therefore, the asserted claims of the '077 patent are invalid as obvious under 35 U.S.C. § 103.

**Fourth Affirmative Defense**

77. The claims of the '077 patent are invalid as they have not complied with 35 U.S.C. § 112.

78. For example, the term "real-time" appears in the specification of the '077 patent in three places, outside of the claims: Col. 2, Line 27; Col. 5, Line 11; and Col. 12, Line 34. In each location that "real-time" is mentioned, it is within a sentence that reads similarly to the following: "Such features would include fast and automatic synchronization between a central database and multiple handheld devices, synchronization and communication between a World Wide Web ("Web") server and multiple handheld devices, a well-defined application program interface ("API") that enables third parties such as point of sale ("POS") companies, affinity program companies and internet content providers to fully integrate with computerized hospitality applications, real-time communication over the internet with direct connections or regular model dialup connections and support for batch processing that can be done periodically throughout the day to keep multiple sites in synch with the central database."

79. The specification of the '077 patent does not teach how real time synchronization of menus or some other hospitality information would be maintained between a wireless handheld device and a master menu or master database, which is required by all claims.

80. For example, claims 1-12 of the '077 patent require "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

81. The written description of the '077 patent does not support "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

82. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

83. For example, claims 1-8 of the '077 patent require that "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

84. The written description of the '077 patent does not support "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

85. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

86. For example, claim 9-12 of the '077 patent require "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

87. The written description of the '077 patent does not support "the menu configuration

software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

88. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

89. For example, claims 13-18 of the '077 patent require "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet".

90. The written description of the '077 patent does not support "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet".

91. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet".

92. For example, claims 13-18 of the '077 patent require "real time communications software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

93. The written description of the '077 patent does not support "real time communications

software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

94. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "real time communications software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

95. For example, claims 1-18 all require a "real time synchronous communications system". A person of ordinary skill in the art would find the phrase "real time synchronous communications system" insolubly ambiguous, and therefore, all claims of the '077 patent are indefinite.

96. Therefore, all claims of the '077 patent are invalid for failing to comply with 35 U.SC. § 112.

**Fifth Affirmative Defense**

97. Ameranth is estopped from construing a valid claim, if any should exist, of the '077 patent to be infringed literally or under the Doctrine of Equivalents due to admissions and/or statements made (a) to the U.S. Patent & Trademark Office during prosecution of the '077 patent or a related patent, (b) in the specification of the '077 patent or a related patent, (c) and/or during prior litigation of the '077 patent or a related patent.

**Sixth Affirmative Defense**

98. Ameranth's claims for relief are barred by the doctrine of prosecution laches.

99. Ameranth filed U.S. Appl. No. 09/400,413, which matured into the '850 patent on September 21, 1999. Ameranth filed the immediate predecessor of the '077 patent, U.S. Appl. No. 10/016,517, as a continuation-in-part of U.S. Appl. No. 09/400,413 on November 1, 2001. U.S. Appl. No. 10/016,517 was the last application to add new matter to the line from which the '077 patent descends.

100. The claims that issued in the '077 patent were not first presented until February 2, 2012, or more than twelve (12) years after the filing of the '850 patent and more than ten (10)

years after Ameranth last added new matter to the line from which the '077 patent descends.

101. During those ten to twelve years, GrubHub was founded, developed a restaurant service that now includes menus from more than 250,000 restaurants, allows online ordering from nearly fifteen thousand (15,000) restaurants in more than three hundred (300) cities, and has helped millions of diners order food.

102. Ameranth's attempt to claim infringement of the '077 patent by GrubHub would prejudice GrubHub, which has expended significant effort and spent millions of dollars in developing its restaurant service and business during the ten to twelve years that Ameranth did not pursue the claims that matured into the '077 patent.

103. Accordingly, Ameranth is barred from seeking any relief for its claim of infringement of the '077 patent against GrubHub by the doctrine of prosecution laches.

### Seventh Affirmative Defense

104. On information and belief, Ameranth's claims are barred by the doctrines of waiver, estoppel, and/or unclean hands.

### Eighth Affirmative Defense

105. All claims of the '077 patent are unenforceable due to inequitable conduct during the prosecution of the '077 patent by Fabiano, who acted as prosecution counsel for Ameranth before the PTO, and Keith McNally ("McNally"), a named inventor and officer of Ameranth.

106. On February 2, 2010, McNally, who was then Chief Executive Officer of Ameranth, executed a power of attorney allowing Fabiano to represent Ameranth before the PTO within the prosecution of the '077 patent.

107. During the prosecution of the '077 patent McNally executed no fewer than four (4) declarations and participated in multiple interviews between Ameranth and the PTO. Accordingly, on information and belief, McNally was significantly involved in the prosecution of the '077 patent.

108. On information and belief, McNally stands to benefit financially from any licensing fees

or other revenue generated by the '077 patent.

109.  Fabiano was retained by Ameranth to represent them in the prosecution of the '077 patent and the litigation of the '077 patent, and was significantly involved in the prosecution of the '077 patent.  On information and belief, Fabiano stands to benefit financially from any licensing fees or other revenue generated by the '077 patent.

110.  On February 2, 2012, Examiner Matthew Brophy ("Brophy") issued a notice of allowance after entering an earlier Examiner's amendment, Ameranth paid the issue fee on February 6, 2012, and the '077 patent actually issued on March 27, 2012. Examiner Brophy primarily handled the examination of the '077 patent.

111.  On July 26, 2005 U.S. Pat. Appl. 11/190,633 ("the '633 application") was filed on behalf of Ameranth as a continuation-in-part of the application that matured into the '077 patent. The specification of the '077 patent is substantially similar to that of the '633 application.

112.  Examination of the '633 application has primarily been handled by Examiner Rutao Wu ("Wu").

113.  In an office action mailed on January 7, 2010, Examainer Wu finally rejected all claims then pending of the '633 application as obvious over the combination of U.S. Pat. Nos. 7,069,228 ("Rose") and 6,415,138 ("Sirola").    The January 7, 2010 office action is attached as Exhibit E.  Sirola is attached hereto as Exhibit J.

114.  Examiner Wu essentially argued that the web server of Rose served up hospitality information in accordance with the claimed elements, and that it would have been obvious to use the smart phone of Sirola to display the hospitality information served by Rose's web server using a web browser integrated into the smart phone. *See* Exh. E pp. 2-4, 6-7.

115.  On information and belief, Fabiano or another attorney of Ameranth discussed the January 7, 2010 final rejection with McNally and made him aware of the combination of Rose and Sirola.

116.  On July 2, 2010, McNally, who was then President of Ameranth, executed a power of attorney allowing Fabiano to prosecute the '633 application.  On the same day Fabiano filed a response to the rejection of all of Ameranth's claims then pending in the '633

application.  The July 2, 2010 response added a claim element to claims 77 and 97 that required that hospitality information be displayed on "non PC standard display sizes" including display on the wireless handheld computing device.  The July 2, 2010 response presented detailed arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola, and the other cited art.  Ameranth's July 2, 2010 response is attached hereto as Exhibit F.

117.  Despite Ameranth's arguments, Examiner Wu continued to reject all of Ameranth's claims in an office action dated October 5, 2010, which continued to rely on the combination of Rose and Sirola.  All of Ameranth's arguments were rejected by Examiner Wu in the October 5, 2010 office action, which is attached hereto as Exhibit G.

118.  On October 26, 2010, Fabiano filed a response to the October 5, 2010 rejection.  The October 26, 2010 response presented additional detailed arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola and the other cited art.

119.  On information and belief, on November 16, 2010 Fabiano held a telephonic interview with Examiner Wu during which Rose, Sirola, and other prior art references were discussed.

120.  On December 8, 2010 Fabiano filed a supplemental response presenting additional arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola and the other cited art.

121.  On February 15, 2011 Examiner Wu issued a final rejection of all of pending claims of the '633 application.  The February 15, 2011 rejection maintained Rose as the primary reference, and maintained the combination with Sirola.  A new combination with U.S. Pat. No. 6,356,543 ("Hall") was added as well.  Hall is attached hereto as Exhibit K.  In the February 15, 2011 rejection, which is attached hereto as Exhibit H, Examiner Wu set forth detailed rebuttals to Ameranth's arguments.  *See* Exh. H, pp. 3 – 13.

122.  Ameranth appealed Examiner Wu's Decision.  Ameranth filed its Appeal Brief on March 30, 2011.  Examiner Wu filed an Examiner's Answer on June 6, 2011, attached hereto as Exhibit I.  Ameranth filed its reply brief on August 4, 2011.  As of the date of this answer,

this appeal is still pending.  None of the briefing of this appeal was submitted to the Patent Office with regards to the prosecution of the '077 patent.

123. Hall discloses a phone that can be used to download applications.  It would have been obvious to a person of skill in the art at the time of the alleged invention to extend Hall to allow the download of an application allowing a web service interface with the web applications of Rose.

124. The reasons for allowance for the '077 patent reads as follows:  "none of the prior art of record, alone or in reasonable combination, teach the limitations:  wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system.  When combined with the other limitations of claim 103, 118 and 122.  Specifically in these independent claims, the menu generation software and hospitality applications, in the context of the claimed system, which automatically create programmed handheld displayed as cascaded sets of graphical user interface screens for at least two different sizes and including at least two cascaded sets of GUIs with disparate screen counts in not found in the prior art as of the priority date September 21, 1999.  No prior art of record, nor any combination [] teaches all limitations of the newly amended independent claims."

125. The combination of Rose, Sirola, and Hall speaks directly to the limitations that caused Examiner Brophy to issue the '077 patent.  In particular, Rose discloses that it serves up hospitality content using a web server as a series of related hospitality web pages.  *See* Exh. B, Figs. 5A – 22; Exh. H, pp. 2-13, 13-15; Exh I, pp. 4-5, 13-29.  The content of Rose, can be displayed by any conventional web browser.  *See* Exh. H, pp. 2-13, 13-15. Sirola and Hall both disclose wireless handheld computing devices that can be used to

display the web pages served by the web server of Rose.  *See* Exh. J, 2:1-11, and Exh. K, Abstract.  Both Sirola and Hall disclose separate wireless handheld computing devices that can be used to display hospitality information.  *See* Exh. H, pp. 12-13, 15; Exh. J, Fig. 1; Exh. K, Fig. 1.  Based on the individual screen sizes and resolutions of the phones of Sirola and Hall, the web pages will appear different from one another.  *Compare* Exh. J, Fig. 1 *with* Exh. K, Fig. 1.  Accordingly, the combination of Rose, Sirola, and Hall makes obvious the very limitations that Ameranth utilized to gain allowance.  *See* Exh. H, pp. 3-5, 11-15; Exh. I, pp. 5-6, 16-21; *see especially* p. 19-20.

126.  In fact, the combination of Rose, Sirola, and Hall makes obvious the entirety of at least claim 13 of the '077 patent.  Accordingly, the '077 patent would not have issued if Fabiano and McNally had fulfilled their duty to disclose these references, as well as the Final Office Action of February 15, 2011 and the Examiner's Answer to  Examiner Brophy.

127.  The analysis of Examiner Wu, as embodied by the Final Office Action of February 15, 2011 (Exh. H), and the Examiner's Answer to Ameranth's Appeal Brief (Exh. I), shows Examiner Wu's detailed theory as to how to apply Rose, Sirola, and Hall to claims that are extremely similar to those that issued in the '077 patent.  Examiner Wu's analysis of the claim elements of claims 77 and 97 requiring the display of hospitality data on "non PC standard display sizes" speaks directly to how Examiner Brophy could have applied Rose, Sirola, and Hall to reject at least claim 13 of the '077 patent.

128.  The preamble of claim 13 requires "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:".  This limitation can be found in Rose (Exh. B) at the Abstract and 2:24-35.

129.  Element 'a' of claim 13 requires "a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure".  This limitation is found in Rose (Exh. B) at Fig. 4, 6:44-55.  Examiner Wu found  the  similar  element  "a  master  database  containing  at  least  one  hospitality

application(s) and associated data" in Rose at 6:44-55; *see also* Exh. H, p. 14; Exh. I, p. 5.

130. Element 'b' of claim 13 requires "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information". The combination of Rose and Sirola discloses this limitation. *See* Rose (Exh. B), Figs. 5A-22, 7:23-25; Sirola (Exh. J), Fig. 1, 2:1-21. Examiner Wu found that the combination of Rose and Sirola discloses "application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored". In particular, Examiner Wu found that Rose disclosed "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22 and 7:23-25, and that Sirola discloses a smart phone device (which is a wireless handheld computing device with non pc standard display) that is capable of displaying web data at 2:1-21. *See* Exh. H, pp. 14-15, and Exh. I, pp. 5-6.

131. Element 'c' of claim 13 requires "at least one web server connected in said system". Rose (Exh. B) discloses this limitation at Fig. 3, 6:60-64. Examiner Wu found that Rose (Exh. B) discloses "at least one web server enabled to interface with at least one hospitality applications and its associated data" at 6:60-64. *See* Exh. H, p. 14, Exh. I, p. 5.

132. Element 'd' of claim 13 requires "at least one web page connected in said system and configured to display said hospitality application information". Rose (Exh. B) discloses this limitation at Figs. 5A-22, 7:23-25. Examiner Wu found that Rose discloses "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22; and 7:23-25. *See* Exh. H, p. 14; Exh. I, p. 5.

133. Element 'e' of claim 13 requires "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page". The combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J) at Fig. 1, 2:1-21, Hall (Exh. K) at Fig. 1, 3:49-4:37. Examiner Wu found that the combination of Rose,

Sirola, and Hall discloses "wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page". *See* Exh. H, pp. 14-15; Exh. I, pp. 5-6.

134. Claim 13 requires "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized screen, such that the hospitality application information is synchronized between any connected users".  The combination of Rose, Sirola, and Hall discloses this limitation.  *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J), Fig. 1, 2:1-21, Hall (Exh. K), Fig. 1, 3:49-4:37.

135. Claim 13 requires "wherein the communication control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".  Rose (Exh. B) discloses this limitation at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18.  Examiner Wu found that Rose discloses "wherein the system is enabled to perform an automated communications conversion via application software involving the data associated with the at least one hospitality application" at 7:42-55.  *See* Exh. H, p. 14, Exh. I, p. 5.

136. Claim 13 requires "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size

of the handheld computing device display screen or the web page". The combination of Rose, Sirola and Hall discloses this limitation. *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J) at Fig. 1, 2:1-21, Hall (Exh. K) at Fig. 1, 3:49-4:37.

137. Claim 13 requires "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system". As addressed previously, Examiner Wu spoke directly to this limitation; *see supra* ¶¶ 124-127. With regards to the limitation "cascaded sets of linked graphical user interface screens", this limitation is discussed in the '077 patent at 6:37-53. Rose (Exh. B) discloses multiple "cascaded sets of linked graphical user interface screens" at Figs. 5A-22. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37.

138. Claim 13 requires "wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system". As addressed previously, Examiner Wu spoke directly to this limitation; *see supra* ¶¶ 124-127. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37; in particular, *compare* Sirola (Exh. J), Fig. 1 with Hall (Exh. K), Fig. 1.

139. Claim 13 requires "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless

handheld computing device, or the web server or the web page." The combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22,  6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37;

140. On information and belief, McNally became aware of Rose and Sirola sometime before Fabiano filed the response in the '633 application on July 2, 2010.

141. On information and belief, Fabiano became aware of Rose and Sirola sometime before July 2, 2010.

142. A period of 635 days, or more than 90 weeks, passed between July 2, 2010 and the issuance of the '077 patent on March 27, 2012.  Ameranth could have submitted Rose and Sirola to the PTO so that they would be of record for the prosecution of the '077 patent on any of those 635 days.

143. On information and belief, Fabiano became aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

144. On information and belief, Fabiano or another of Ameranth's attorney's made McNally aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

145. On information and belief, Fabiano became aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

146. On information and belief, Fabiano or another of Ameranth's attorneys made McNally aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

147. The preamble of claim 13 of the '077 patent reads "An information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:".  The preamble of claims 77 and 97 of the '633 application is identical to the preamble of claim 13 of the '077 patent.

148. Element (a) of claim 13 of the '077 patent reads "a master database connected in said system and configured to store hospitality application information pursuant to a master

database file structure".  Element (a) of claim 77 of the '633 application reads "a master database containing at least one hospitality application(s) and associated data".  Element (a) of claim 97 of the '633 application reads "a master database containing hospitality applications and associated data".

149.  Element (b) of claim 13 of the '077 patent reads "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information".  Element (b) of claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored".  Element (b) of claim 97 of the '633 application reads "data application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored".

150.  Element (c) of claim 13 of the '077 patent reads "at least one web server connected in said system".  Element (c) of claim 77 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality application and its associated data".  Element (c) of claim 97 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality applications and associated data".

151.  Element (d) of claim 13 of the '077 patent reads "at least one web page connected in said system and configured to display said hospitality application information".  Element (d) of claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on at least one web page".

152.  Element (e) of claim 13 of the '077 patent reads "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".  The second wherein clause of claim 77 of the '633 application reads "wherein the system is enabled via application software to synchronize the at least

26                                    (12 cv 00739)

one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page". The first wherein clause of claim 97 of the '633 application reads "wherein the system is enabled by application software to synchronize the at least one hospitality application and data in real time between the master database, the at least one wireless handheld computing device, the at least one Web server and the at least one Web page".

153. The second wherein clause of claim 13 of the '077 patent reads "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol". The third wherein clause of claim 77 of the '633 application reads "wherein the communications control module is enabled via application software to act as an interface between the at least one hospitality application(s) and any applicable communications protocol". The second wherein clause of claim 97 of the '633 application reads "wherein the communications control module is also enabled via application software to act as an interface between the at least one hospitality applications and any applicable communications protocol".

154. The claims of the '077 patent and the pending claims of the '633 application that have been rejected in view of Rose, Sirola, Hall, and other art contain numerous similar elements.

155. Given the significant similarity between the rejected claims of the '633 application and the claims of the '077 patent, Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, in that the claims of the '077 patent would not have issued if Examiner Brophy had been aware of them.

156. Given the significant similarity between the rejected claims of the '633 application and the claims of the '077 patent, Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final

Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief were not cumulative to the prior art of record in the prosecution of the '077 patent. In particular, no reference or combination of references had been used by another PTO examiner to reject co-pending claims that were substantially similar to those that issued with the '077 patent.

157. On information and belief, prior to February 6, 2012, Fabiano became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered Fabiano's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

158. On information and belief, prior to February 6, 2012, McNally became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered McNally's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

159. On information and belief, prior to March 27, 2012, Fabiano became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered Fabiano's duty to

disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

160.  On information and belief, prior to March 27, 2012, McNally became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered McNally's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

161.  Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief are not listed on any information disclosure statement submitted by Ameranth during prosecution of the '077 patent.

162.  Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not cited by Examiner Brophy during prosecution of the '077 patent.

163.  Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not disclosed to the PTO during the prosecution of the '077 patent by Fabiano, McNally, or any other agent of Ameranth.

164.  On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO.

165.  On information and belief, McNally intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO.

166. On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO with the specific intention of deceiving the Patent Office during the prosecution of the '077 patent and thereby breached his duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56.

167. On information and belief, McNally intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO with the specific intention of deceiving the Patent Office during the prosecution of the '077 patent and thereby breached his duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56.

168. The '077 patent would not have issued if Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief had been disclosed to Examiner Brophy. Accordingly, all claims of the '077 patent are unenforceable due to Fabiano and McNally's inequitable conduct during the prosecution of the '077 patent.

### Ninth Affirmative Defense

169. The Complaint fails to adequately set forth allegations sufficient to support its claims of infringement and therefore fails to state a claim under 35 U.S.C. § 271(a),(b), and (c).

### Tenth Affirmative Defense

170. Ameranth's claims for costs are barred, in whole or in part, under 35 U.S.C. § 288.

### Eleventh Affirmative Defense

171. To the extent that Ameranth alleges a theory of divided infringement of multiple actors, GrubHub lacks the requisite direction or control over the activities of other required actors, and therefore, GrubHub cannot be held liable for any joint infringement of any valid and enforceable claim of the '077 patent.

### <u>COUNTERCLAIMS</u>

GrubHub alleges as follows for its Counterclaims against Ameranth.

///

**PARTIES**

172. GrubHub is a Delaware corporation.

173. On information and belief, Ameranth is a Delaware corporation having a principal place of business at 5820 Oberlin Drive, Suite 202, San Diego, California 92121.

**JURISDICTION AND VENUE**

174. Ameranth filed a Complaint against GrubHub in this Court.

175. Ameranth alleges in its Complaint that it is the lawful owner by assignment of all right, title, and interest in and to U.S. Pat. No. 8,146,077 ("the '077 patent").

176. Ameranth alleges in its First Amended Complaint that GrubHub has infringed the '077 patent.

177. An actual and justiciable controversy exists between Ameranth and GrubHub.

178. This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1338(a), the Patent Laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 §§ U.S.C. 2201 – 2202.

179. Venue is proper in this judicial district pursuant to 28 §§ U.S.C. 1391(b), 1391(c) and 1400.

180. Ameranth has appeared in this lawsuit, is represented by counsel, and has submitted to the jurisdiction of this Court.

**BACKGROUND**

181. Ameranth has a history of litigious behavior, and has previously asserted patents directly related to the '077 patent against GrubHub and other Defendants.

    a. Cause no. 2:07-CV-00271, in the Eastern District of Texas, asserting U.S. Pat. Nos. 6,384,850, 6,871,325, and 6,982,733.

    b. Cause no. 2:10-CV-00294, in the Eastern District of Texas, asserting U.S. Pat. Nos. 6,384,850, 6,871,325, and 6,982,733.

    c. Cause no. 3:11-CV-01810 in the Southern District of California, asserting U.S. Pat. Nos. 6,384,850 and 6,871,325.

    d. Cause no. 3:12-CV-00739 in the Southern District of California, asserting U.S.

Pat. No. 8,146,077.

182. In cause no. 2:07-CV-00271, a 5-day jury trial was held from September 13, 2010 to September 17, 2010.   A jury found that the defendants, Menusoft and CRS, did not infringe the '850 patent, the '325 patent, or the '733 patent.   Furthermore, the jury found that Menusoft and CRS had proven, by clear and convincing evidence that all asserted claims of the '850 patent, the '325 patent, and the '733 patent were invalid as anticipated by, and obvious in view of, various prior art references.   The Court denied Ameranth's motion for judgment as a matter of law ("JMOL") of no anticipation, nonobviousness, and no invalidity of the asserted claims of the '850 patent, the '325 patent, and the '733 patent.

**FIRST COUNTERCLAIM**

183. GrubHub incorporates by reference the allegations and answers of all preceding and subsequent paragraphs of these counterclaims as if fully set forth herein.

184. GrubHub does not infringe any valid and enforceable claim of the '077 patent.

185. For example, claims 1-12 of the '077 patent require "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

186. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

187. For example, claims 1-8 of the '077 patent require "menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are

synchronized in real time with analogous information comprising the master menu".

188. GrubHub does not make, use, sell or offer for sale an "ordering system/product/service" that includes "menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

189. For example, claims 9-12 of the '077 patent require "a modifier menu capable of being stored on said data storage device, and menu configuration software enabled to automatically generate a programmed handheld menu configuration from said master menu for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

190. GrubHub does not make, use, sell or offer for sale an "ordering system/product/service" that includes "a modifier menu capable of being stored on said data storage device, and menu configuration software enabled to automatically generate a programmed handheld menu configuration from said master menu for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu

(12 cv 00739)

categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

191. For example, claims 1-12 of the '077 patent require "wherein the menu configuration software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface".

192. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the menu configuration software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface".

193. For example, claims 1-8 require "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said programmed cascaded sets of linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user

interface screens for display of the master menu on said first graphical user interface".

194. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said programmed cascaded sets of linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user interface screens for display of the master menu on said first graphical user interface".

195. For example, claims 9-12 of the '077 patent require "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said cascaded sets of linked graphical user interface screens for display of the programmed handheld menu configuration are configured differently from the cascaded sets of related graphical user interface screens for display of the master menu on said first graphical user interface".

196. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the programmed handheld menu configuration is configured by the menu configuration software for display as cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said cascaded sets of linked graphical user interface screens for display of the programmed handheld menu configuration are configured differently from the cascaded sets of related graphical user interface screens for display of the master menu on said first graphical user interface".

197. For example, claims 1-8 of the '077 patent require "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the

wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

198. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

199. For example, claims 9-12 of the '077 patent require "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

200. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device".

201. For example, claims 1-12 of the '077 patent require "wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized

display layout of at least two different wireless handheld computing device display sizes in the same connected system".

202. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

203. For example, claims 13-18 of the '077 patent require "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising".

204. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising".

205. For example, claims 13-18 of the '077 patent require "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

206. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

207. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality application information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized system, such

that the hospitality application information is synchronized between any connected users".

208. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality application information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized system, such that the hospitality application information is synchronized between any connected users".

209. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".

210. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".

211. For example, claims 13-18 of the '077 patent require "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page".

212. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a

customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page".

213. For example, claims 13-18 of the '077 patent require "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

214. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".

215. For example, claims 13-18 of the '077 patent require "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page."

216. GrubHub does not make, use, sell, or offer for sale an "ordering system/product/service" that includes "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page."

217. GrubHub has not infringed and is not infringing, either literally or under the Doctrine of Equivalents, directly or indirectly, by inducement or contribution, any valid and

enforceable claim of the '077 patent.

218. As GrubHub has not infringed and is not infringing any valid and enforceable claim of the '077 patent, GrubHub has not willfully infringed and is not willfully infringing any valid and enforceable claim of the '077 patent.

## SECOND COUNTERCLAIM

219. GrubHub incorporates by reference the allegations and answers of all preceding and subsequent paragraphs of these counterclaims as if fully set forth herein.

220. The asserted claims of the '077 patent are taught in one or more single prior references and/or by a single prior art system, and are, therefore, invalid as anticipated.

221. For example, under the constructions that Ameranth is apparently taking in this case, each and every element of the claims of the '077 patent are taught by U.S. Pat. No. 5,845,263 ("Camaisa"), issued December 1, 1998, and titled Visual Ordering System.  A true and correct copy of Camaisa is attached hereto as Exhibit A.  Camaisa is prior art to the '077 patent.

222. For example, under the constructions that Ameranth is apparently taking in this case, each and every element of the asserted claims of the '077 patent are taught by U.S. Pat. No. 7,069,228 ("Rose"), issued June 27, 2006 and titled "Apparatus and Method for an Internet Based Computer Reservation Booking System".  A true and correct copy of Rose is attached hereto as Exhibit B.  Rose is prior art to the '077 patent.

223. Ameranth has accused Allmenus.com and Campusfood.com of infringing the '077 patent.

224. Allmenus.com and Campusfood.com use a common ordering system ("the Campusfood Ordering System").

225. The Campusfood Ordering System was designed and implemented prior to September 2, 1997.  On September 2, 1997, the Campusfood Ordering System took its first public orders, and it has been in continuous use since then.   A brochure discussing the Campusfood Ordering System is attached as Exhibit C.

226. Under the constructions put forth by Ameranth in the First Menusoft Action, each and every element of the asserted claims of the '077 patent was present in the Campusfood

Ordering System prior to the earliest priority date of the '077 patent.

227.   Therefore, the claims of the '077 patent are invalid as anticipated under 35 U.S.C. § 102.

### THIRD COUNTERCLAIM

228. GrubHub incorporates by reference the allegations and answers of all preceding and subsequent paragraphs of these counterclaims as if fully set forth herein.

229. The claims of the '077 patent are invalid as one of ordinary skill in the art would have found them obvious at the time of alleged invention.  *See* 35 U.S.C. § 103.

230. The "TransPad" is prior art to the '077 patent.  A true and correct copy of a publication describing the TransPad is attached hereto as Exhibit D.

231. The claims of the '077 patent would have been obvious to one of ordinary skill in the art, for example, through a combination of one or more of TransPad, Camaisa, Rose, the Campusfood Ordering System, or other prior art references.

232.   Therefore, the asserted claims of the '077 patent are invalid as obvious under 35 U.S.C. § 103.

### FOURTH COUNTERCLAIM

233. GrubHub incorporates by reference the allegations and answers of all preceding and subsequent paragraphs of these counterclaims as if fully set forth herein.

234. The claims of the '077 patent are invalid as they have not complied with 35 U.S.C. § 112.

235. For example, the term "real-time" appears in the specification of the '077 patent in three places, outside of the claims:  Col. 2, Line 27; Col. 5, Line 11; and Col. 12, Line 34.  In each location that "real-time" is mentioned, it is within a sentence that reads similarly to the following:  "Such features would include fast and automatic synchronization between a central database and multiple handheld devices, synchronization and communication between a World Wide Web ("Web") server and multiple handheld devices, a well-defined application program interface ("API") that enables third parties such as point of sale ("POS") companies, affinity program companies and internet content providers to fully integrate with computerized hospitality applications, real-time communication over the internet with direct connections or regular model dialup connections and support for

batch processing that can be done periodically throughout the day to keep multiple sites in synch with the central database."

236. The specification of the '077 patent does not teach how real time synchronization of menus or some other hospitality information would be maintained between a wireless handheld device and a master menu or master database, which is required by all claims.

237. For example, claims 1-12 of the '077 patent require "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

238. The written description of the '077 patent does not support "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

239. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "[a]n information management and real time synchronous communications system for configuring and transmitting hospitality menus".

240. For example, claims 1-8 of the '077 patent require that "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

241. The written description of the '077 patent does not support "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

242. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary

skill in the art to implement "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu".

243. For example, claim 9-12 of the '077 patent require "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

244. The written description of the '077 patent does not support "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

245. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the categories and items of the master menu and modifiers from the modifier menu at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master and modifier menus".

246. For example, claims 13-18 of the '077 patent require "[a]n information management and

real time synchronous communications system for use with wireless handheld computing devices and the internet".

247. The written description of the '077 patent does not support "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet".

248. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet".

249. For example, claims 13-18 of the '077 patent require "real time communications software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

250. The written description of the '077 patent does not support "real time communications software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

251. The disclosure of the '077 patent taken as a whole does not enable a person of ordinary skill in the art to implement "real time communications software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".

252. For example, claims 1-18 all require a "real time synchronous communications system". A person of ordinary skill in the art would find the phrase "real time synchronous communications system" insolubly ambiguous, and therefore, all claims of the '077 patent are indefinite.

253. Therefore, all claims of the '077 patent are invalid for failing to comply with 35 U.SC. § 112.

///

# FIFTH COUNTERCLAIM

254.  GrubHub incorporates by reference the allegations and answers of all preceding and subsequent paragraphs of these counterclaims as if fully set forth herein.

255.  All claims of the '077 patent are unenforceable due to inequitable conduct during the prosecution of the '077 patent by Fabiano, who acted as prosecution counsel for Ameranth before the PTO, and Keith McNally ("McNally"), a named inventor and officer of Ameranth.

256.  On February 2, 2010, McNally, who was then Chief Executive Officer of Ameranth, executed a power of attorney allowing Fabiano to represent Ameranth before the PTO within the prosecution of the '077 patent.

257.  During the prosecution of the '077 patent McNally executed no fewer than four (4) declarations and participated in multiple interviews between Ameranth and the PTO. Accordingly, on information and belief, McNally was significantly involved in the prosecution of the '077 patent.

258.  On information and belief, McNally stands to benefit financially from any licensing fees or other revenue generated by the '077 patent.

259.  Fabiano was retained by Ameranth to represent them in the prosecution of the '077 patent and the litigation of the '077 patent, and was significantly involved in the prosecution of the '077 patent. On information and belief, Fabiano stands to benefit financially from any licensing fees or other revenue generated by the '077 patent.

260.  On February 2, 2012, Examiner Matthew Brophy ("Brophy") issued a notice of allowance after entering an earlier Examiner's amendment, Ameranth paid the issue fee on February 6, 2012, and the '077 patent actually issued on March 27, 2012. Examiner Brophy primarily handled the examination of the '077 patent.

261.  On July 26, 2005 U.S. Pat. Appl. 11/190,633 ("the '633 application") was filed on behalf of Ameranth as a continuation-in-part of the application that matured into the '077 patent. The specification of the '077 patent is substantially similar to that of the '633 application.

262.  Examination of the '633 application has primarily been handled by Examiner Rutao Wu

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

("Wu").

263. In an office action mailed on January 7, 2010, Examainer Wu finally rejected all claims then pending of the '633 application as obvious over the combination of U.S. Pat. Nos. 7,069,228 ("Rose") and 6,415,138 ("Sirola").   The January 7, 2010 office action is attached as Exhibit E.  Sirola is attached hereto as Exhibit J.

264. Examiner Wu essentially argued that the web server of Rose served up hospitality information in accordance with the claimed elements, and that it would have been obvious to use the smart phone of Sirola to display the hospitality information served by Rose's web server using a web browser integrated into the smart phone. *See* Exh. E pp. 2-4, 6-7.

265. On information and belief, Fabiano or another attorney of Ameranth discussed the January 7, 2010 final rejection with McNally and made him aware of the combination of Rose and Sirola.

266. On July 2, 2010, McNally, who was then President of Ameranth, executed a power of attorney allowing Fabiano to prosecute the '633 application.  On the same day Fabiano filed a response to the rejection of all of Ameranth's claims then pending in the '633 application.  The July 2, 2010 response added a claim element to claims 77 and 97 that required that hospitality information be displayed on "non PC standard display sizes" including display on the wireless handheld computing device.  The July 2, 2010 response presented detailed arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola, and the other cited art.  Ameranth's July 2, 2010 response is attached hereto as Exhibit F.

267. Despite Ameranth's arguments, Examiner Wu continued to reject all of Ameranth's claims in an office action dated October 5, 2010, which continued to rely on the combination of Rose and Sirola.  All of Ameranth's arguments were rejected by Examiner Wu in the October 5, 2010 office action, which is attached hereto as Exhibit G.

268. On October 26, 2010, Fabiano filed a response to the October 5, 2010 rejection.  The October 26, 2010 response presented additional detailed arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola and the other cited art.

269. On information and belief, on November 16, 2010 Fabiano held a telephonic interview with Examiner Wu during which Rose, Sirola and other prior art references were discussed.

270. On December 8, 2010 Fabiano filed a supplemental response presenting additional arguments attempting to distinguish Ameranth's alleged invention from Rose, Sirola and the other cited art.

271. On February 15, 2011 Examiner Wu issued a final rejection of all of pending claims of the '633 application.   The February 15, 2011 rejection maintained Rose as the primary reference, and maintained the combination with Sirola.  A new combination with U.S. Pat. No. 6,356,543 ("Hall") was added as well.  Hall is attached hereto as Exhibit K.  In the February 15, 2011 rejection, which is attached hereto as Exhibit H, Examiner Wu set forth detailed rebuttals to Ameranth's arguments.  *See* Exh. H, pp. 3 – 13.

272. Ameranth appealed Examiner Wu's Decision.  Ameranth filed its Appeal Brief on March 30, 2011.  Examiner Wu filed an Examiner's Answer on June 6, 2011, attached hereto as Exhibit I.  Ameranth filed its reply brief on August 4, 2011.  As of the date of this answer, this appeal is still pending.  None of the briefing of this appeal was submitted to the Patent Office with regards to the prosecution of the '077 patent.

273. Hall discloses a phone that can be used to download applications.  It would have been obvious to a person of skill in the art at the time of the alleged invention to extend Hall to allow the download of an application allowing a web service interface with the web applications of Rose.

274. The reasons for allowance for the '077 patent reads as follows:  "none of the prior art of record, alone or in reasonable combination, teach the limitations:  wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system

1
2
3
4
5
6
7
8
9

includes a different number of user interface screens from at least one other wireless handheld computing device in the system.  When combined with the other limitations of claim 103, 118 and 122.  Specifically in these independent claims, the menu generation software and hospitality applications, in the context of the claimed system, which automatically create programmed handheld displayed as cascaded sets of graphical user interface screens for at least two different sizes and including at least two cascaded sets of GUIs with disparate screen counts in not found in the prior art as of the priority date September 21, 1999.  No prior art of record, nor any combination [] teaches all limitations of the newly amended independent claims."

10
11
12
13
14
15
16
17
18
19
20
21
22
23

275. The combination of Rose, Sirola, and Hall speaks directly to the limitations that caused Examiner Brophy to issue the '077 patent.  In particular, Rose discloses that it serves up hospitality content using a web server as a series of related hospitality web pages.  *See* Exh. B, Figs. 5A – 22; Exh. H, pp. 2-13, 13-15; Exh I, pp. 4-5, 13-29.  The content of Rose, can be displayed by any conventional web browser.  *See* Exh. H, pp. 2-13, 13-15. Sirola and Hall both disclose wireless handheld computing devices that can be used to display the web pages served by the web server of Rose.  *See* Exh. J, 2:1-11, and Exh. K, Abstract.  Both Sirola and Hall disclose separate wireless handheld computing devices that can be used to display hospitality information.  *See* Exh. H, pp. 12-13, 15; Exh. J, Fig. 1; Exh. K, Fig. 1.  Based on the individual screen sizes and resolutions of the phones of Sirola and Hall, the web pages will appear different from one another.  *Compare* Exh. J, Fig. 1 *with* Exh. K, Fig. 1.  Accordingly, the combination of Rose, Sirola, and Hall makes obvious the very limitations that Ameranth utilized to gain allowance.  *See* Exh. H, pp. 3-5, 11-15; Exh. I, pp. 5-6, 16-21; *see especially* p. 19-20.

24
25
26
27
28

276. In fact, the combination of Rose, Sirola, and Hall makes obvious the entirety of at least claim 13 of the '077 patent.  Accordingly, the '077 patent would not have issued if Fabiano and McNally had fulfilled their duty to disclose these references, as well as the Final Office Action of February 15, 2011 and the Examiner's Answer to   Examiner Brophy.

277. The analysis of Examiner Wu, as embodied by the Final Office Action of February 15, 2011 (Exh. H), and the Examiner's Answer to Ameranth's Appeal Brief (Exh. I), shows Examiner Wu's detailed theory as to how to apply Rose, Sirola, and Hall to claims that are extremely similar to those that issued in the '077 patent.  Examiner Wu's analysis of the claim elements of claims 77 and 97 requiring the display of hospitality data on "non PC standard display sizes" speaks directly to how Examiner Brophy could have applied Rose, Sirola, and Hall to reject at least claim 13 of the '077 patent.

278. The preamble of claim 13 requires "[a]n information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:".  This limitation can be found in Rose (Exh. B) at the Abstract and 2:24-35.

279. Element 'a' of claim 13 requires "a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure".  This limitation is found in Rose (Exh. B) at Fig. 4, 6:44-55.  Examiner Wu found the similar element "a master database containing at least one hospitality application(s) and associated data" in Rose (Exh. B) at 6:44-55; *see also* Exh. H, p. 14; Exh. I, p. 5.

280. Element 'b' of claim 13 requires "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information".  The combination of Rose and Sirola discloses this limitation.  *See* Rose (Exh. B), Figs. 5A-22, 7:23-25; Sirola (Exh. J), Fig. 1, 2:1-21.  Examiner Wu found that the combination of Rose and Sirola discloses "application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored".  In particular, Examiner Wu found that Rose disclosed "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22 and 7:23-25, and that Sirola discloses a smart phone device (which is a wireless handheld computing device with non pc standard display) that is capable of displaying web data at

2:1-21.  *See* Exh. H, pp. 14-15, and Exh. I, pp. 5-6.

281. Element 'c' of claim 13 requires "at least one web server connected in said system".  Rose (Exh. B) discloses this limitation at Fig. 3, 6:60-64.  Examiner Wu found that Rose (Exh. B) discloses "at least one web server enabled to interface with at least one hospitality applications and its associated data" at 6:60-64.  *See* Exh. H, p. 14, Exh. I, p. 5.

282. Element 'd' of claim 13 requires "at least one web page connected in said system and configured to display said hospitality application information".  Rose (Exh. B) discloses this limitation at Figs. 5A-22, 7:23-25.  Examiner Wu found that Rose (Exh. B) discloses "application software enabled to configure hospitality data for display on at least one web page" at Figs. 5A-22; and 7:23-25.  *See* Exh. H, p. 14; Exh. I, p. 5.

283. Element 'e' of claim 13 requires "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".  The combination of Rose, Sirola, and Hall discloses this limitation.  *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J) at Fig. 1, 2:1-21, Hall (Exh. K) at Fig. 1, 3:49-4:37.  Examiner Wu found that the combination of Rose, Sirola, and Hall discloses "wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page".  *See* Exh. H, pp. 14-15; Exh. I, pp. 5-6.

284. Claim 13 requires "wherein the communications control software is enabled to utilize parameters from the master database file structure to synchronize the hospitality application information in real time between the master database, at least one wireless handheld computing device, at least one web server and at least one web page such that substantially the same information comprising the hospitality information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized screen, such that the hospitality application

information is synchronized between any connected users".  The combination of Rose, Sirola, and Hall discloses this limitation.  *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J), Fig. 1, 2:1-21, Hall (Exh. K), Fig. 1, 3:49-4:37.

285. Claim 13 requires "wherein the communication control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".  Rose (Exh. B) discloses this limitation at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18.  Examiner Wu found that Rose discloses "wherein the system is enabled to perform an automated communications conversion via application software involving the data associated with the at least one hospitality application" at 7:42-55.  *See* Exh. H, p. 14, Exh. I, p. 5.

286. Claim 13 requires "wherein the communications control software is enabled to automatically and simultaneously configure the hospitality application information for display on both the wireless handheld computing device and the web page in conformity with a customized display layout unique to the wireless handheld computing device or the web page, wherein said customized display layout is compatible with the displayable size of the handheld computing device display screen or the web page".  The combination of Rose, Sirola and Hall discloses this limitation.  *See* Rose (Exh. B) at Figs. 4, 23-24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18, Sirola (Exh. J) at Fig. 1, 2:1-21, Hall (Exh. K) at Fig. 1, 3:49-4:37.

287. Claim 13 requires "wherein the communications control software is further enabled to automatically format a programmed handheld configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system".  As addressed previously, Examiner Wu spoke directly to this limitation; *see supra* ¶¶ 274-277.  With regards to the limitation "cascaded sets of linked graphical user interface screens", this limitation is discussed in the '077 patent at 6:37-53.  Rose (Exh. B) discloses multiple "cascaded sets of linked graphical user interface screens"

at Figs. 5A-22. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37.

288. Claim 13 requires "wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system". As addressed previously, Examiner Wu spoke directly to this limitation; *see supra* ¶¶ 274-277. In addition, the combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37; in particular, *compare* Sirola (Exh. J), Fig. 1 with Hall (Exh. K), Fig. 1.

289. Claim 13 requires "wherein the system is enabled for real time synchronous transmission of the configured hospitality application information to the wireless handheld computing device, the web server and the web page and real time synchronous transmissions of inputs responding to the configured hospitality application information from the wireless handheld computing device, or the web server or the web page." The combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose (Exh. B) at Abstract, Figs. 3-4, 23-24, 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola (Exh. J) at Fig. 1, 1:1-21; Hall (Exh. K) at Fig. 1, 3:49-4:37;

290. McNally became aware of Rose and Sirola sometime before Fabiano filed the response in the '633 application on July 2, 2010.

291. On information and belief, Fabiano became aware of Rose and Sirola sometime before July 2, 2010.

292. A period of 635 days, or more than 90 weeks, passed between July 2, 2010 and the issuance of the '077 patent on March 27, 2012. Fabiano could have submitted Rose and Sirola to the PTO so that they would be of record for the prosecution of the '077 patent on any of those 635 days.

293. On information and belief, Fabiano became aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

294. On information and belief, Fabiano or another of Ameranth's attorney's made McNally aware of Hall and the Final Office Action of February 15, 2011 sometime before March 30, 2011.

295. On information and belief, Fabiano became aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

296. On information and belief, Fabiano or another of Ameranth's attorneys made McNally aware of the Examiner's Answer to Ameranth's Appeal Brief sometime before August 4, 2011.

297. The preamble of claim 13 of the '077 patent reads "An information management and real time synchronous communications system for use with wireless handheld computing devices and the internet comprising:". The preamble of claims 77 and 97 of the '633 application is identical to the preamble of claim 13 of the '077 patent.

298. Element (a) of claim 13 of the '077 patent reads "a master database connected in said system and configured to store hospitality application information pursuant to a master database file structure". Element (a) of claim 77 of the '633 application reads "a master database containing at least one hospitality application(s) and associated data". Element (a) of claim 97 of the '633 application reads "a master database containing hospitality applications and associated data".

299. Element (b) of claim 13 of the '077 patent reads "at least one wireless handheld computing device connected in said system and configured to display said hospitality application information". Element (b) of claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld computing device in which the at least one hospitality application is stored". Element (b) of claim 97 of the '633 application reads "data application software enabled to configure hospitality data for display on the 'non pc standard' display sized screen of at least one wireless handheld

computing device in which the at least one hospitality application is stored".

300. Element (c) of claim 13 of the '077 patent reads "at least one web server connected in said system".  Element (c) of claim 77 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality application and its associated data".  Element (c) of claim 97 of the '633 application reads "at least one Web server enabled by application software to interface with at least one hospitality applications and associated data".

301. Element (d) of claim 13 of the '077 patent reads "at least one web page connected in said system and configured to display said hospitality application information".  Element (d) of claim 77 of the '633 application reads "application software enabled to configure hospitality data for display on at least one web page".

302. Element (e) of claim 13 of the '077 patent reads "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page".  The second wherein clause of claim 77 of the '633 application reads "wherein the system is enabled via application software to synchronize the at least one hospitality application(s) and its associated data with the data in a second and different hospitality application in real time between the master database, the at least one Web server, the at least one wireless computing device and the at least one web page".  The first wherein clause of claim 97 of the '633 application reads "wherein the system is enabled by application software to synchronize the at least one hospitality application and data in real time between the master database, the at least one wireless handheld computing device, the at least one Web server and the at least one Web page".

303. The second wherein clause of claim 13 of the '077 patent reads "wherein the communications control software is enabled to act as a real time interface between the elements of the system and any applicable communications protocol".  The third wherein clause of claim 77 of the '633 application reads "wherein the communications control module is enabled via application software to act as an interface between the at least one

(12 cv 00739)

hospitality application(s) and any applicable communications protocol". The second wherein clause of claim 97 of the '633 application reads "wherein the communications control module is also enabled via application software to act as an interface between the at least one hospitality applications and any applicable communications protocol".

304. The claims of the '077 patent and the pending claims of the '633 application that have been rejected in view of Rose, Sirola, Hall, and other art contain numerous similar elements.

305. Given the significant similarity between the rejected claims of the '633 application and the claims of the '077 patent, Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, in that the claims of the '077 patent would not have issued if Examiner Brophy had been aware of them.

306. Given the significant similarity between the rejected claims of the '633 application and the claims of the '077 patent, Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief were not cumulative to the prior art of record in the prosecution of the '077 patent. In particular, no reference or combination of references had been used by another PTO examiner to reject co-pending claims that were substantially similar to those that issued with the '077 patent.

307. On information and belief, prior to February 6, 2012, Fabiano became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered Fabiano's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

308. On information and belief, prior to February 6, 2012, McNally became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered McNally's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

309. On information and belief, prior to March 27, 2012, Fabiano became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered Fabiano's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO under 37 C.F.R. § 1.56.

310. On information and belief, prior to March 27, 2012, McNally became aware that Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief would have been material to the prosecution of the '077 patent, and this awareness triggered McNally's duty to disclose Rose, Sirola, and Hall, as well as Examiner Wu's reasoning in applying them to the claims pending in the '633 application as embodied in the Final Office Action of February 15, 2011 and the Examiner's Answer to Ameranth's Appeal Brief to the PTO

under 37 C.F.R. § 1.56.

311. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief are not listed on any information disclosure statement submitted by Ameranth during prosecution of the '077 patent.

312. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not cited by Examiner Brophy during prosecution of the '077 patent.

313. Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief were not disclosed to the PTO during the prosecution of the '077 patent by Fabiano, McNally, or any other agent of Ameranth.

314. On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO.

315. On information and belief, McNally intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO.

316. On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO with the specific intention of deceiving the Patent Office during the prosecution of the '077 patent and thereby breached his duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56.

317. On information and belief, McNally intentionally withheld Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO with the specific intention of deceiving the Patent Office during the prosecution of the '077 patent and thereby breached his duty of good faith and candor in dealing with the PTO under 37 C.F.R. § 1.56.

318. The '077 patent would not have issued if Rose, Sirola, Hall, the Final Office Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief had been

disclosed to Examiner Brophy.   Accordingly, all claims of the '077 patent are unenforceable due to Fabiano and McNally's inequitable conduct during the prosecution of the '077 patent.

## TRIAL BY JURY

319. GrubHub demands a trial by jury on all issues so triable

## PRAYER FOR RELIEF

320. GrubHub, reserving its right to amend its pleading to add additional defenses, affirmative defenses, and counterclaims if warranted by discovery in this lawsuit, requests the following relief:

a.  A judgment declaring that GrubHub has not infringed any valid and enforceable claim of the '077 patent.

b.  A judgment declaring that all claims of the '077 patent are invalid as anticipated by the prior art.

c.  A judgment declaring that all claims of the '077 patent are obvious in view of the prior art.

d.  A judgment declaring that all claims of the '077 patent are invalid for failure to comply with 35 U.S.C. § 112.

e.  A judgment declaring that Ameranth's Complaint for Patent Infringement is dismissed with prejudice, and that Ameranth take nothing by its Complaint.

f.  An injunction enjoining Ameranth, any other party claiming rights through Ameranth, and any other party in privity with Ameranth, from charging infringement of the '077 patent against GrubHub and anyone in privity with GrubHub, including its successors, assigns, agents, and customers.

g.  A judgment declaring that the '077 patent is unenforceable due to inequitable conduct.

h.  A judgment declaring that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award to GrubHub of its reasonable attorney's fees and costs of suit pursuant to 35 U.S.C. §§ 284, 285, and all other applicable statutes, rules, and law.

///

1       i.   All such other relief that this Court may deem just and proper.

2

3   DATED: August 2, 2012                     ROBERTSON & ASSOCIATES, APC

4

5                                            By:  _/s/Les W. Robertson_____
                                             Les W. Robertson
6                                            Robertson & Associates, APC
                                             655 West Broadway, Suite 1410
7                                            San Diego, CA  92101
                                             Tel: (619) 531-7000
8                                            Fax: (619) 531-7007
                                             Attorneys for Defendant
9                                            GRUBHUB, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT